# EXHIBIT "B"

# Arthur T. Schofield, P.A.
## Attorney at Law
*Fighting for the Rights of Employees & Victims since 1993*

**Arthur Schofield, Esq.**
aschofield@flalabor.com

**Renae Main, Paralegal**
rmain@flalabor.com

June 21, 2022

| | | |
|---|---|---|
| Wyman N. Bravard,<br>Officer/Director<br>Frost & Sullivan<br>7550 IH 10 West, Suite 400<br>San Antonio, TX 78229<br>Wyman_Bravard@Frost.com | David Frigstad<br>Frost & Sullivan<br>3211 Scott Blvd, Suite 203<br>Santa Clara, CA 95054<br>David_Frigstad@Frost.com | Darrell Huntsman<br>Frost & Sullivan<br>7550 IH 10 West, Suite 400<br>San Antonio, TX 78229<br>Darrell.Huntsman@Frost.com |

Re:   **Robert F. Jaggers III**

Dear Mr. Bravard:

My office has the pleasure of representing Robert F. Jaggers III who has advised of the termination of his employment as a Senior Global Director of Brand and Demand with Frost & Sullivan ("F&S") and shared the facts and circumstances leading up to this decision. More specifically, Mr. Jaggers shared that he was one of top four revenue producers globally for F&S and on April 27, 2022 had been awarded the Chairman's Club for achieving $2.4M in revenue on a $1.8M target. He also was recently given a raise. Suffice it to say, none of these achievements and accolades gave Mr. Jaggers reason to think that his employment was in jeopardy.

This, of course, begs the question as to why his employment was terminated. We firmly believe it was Mr. Jaggers' opposition to illegal activities taking place within F&S that was the true motivation for this decision. Mr. Jaggers has shared that he had several conversations with Gary Robbins, the person who terminated his employment, about his concerns that F&S was selling its clients fraudulent information. Mr. Robbins was well aware of Mr. Jagger's intent to share his concerns with the CEO, Darrell Huntsman, and the Vice-President of Sales, John Ruggles, during a meeting scheduled for May 16, 2022. On May 4, 2022 Mr. Robbins abruptly and without reason, informed Mr. Jaggers that he was to attend a meeting virtually despite long established plans for him to attend in-person. Then, just two days latter, Mr. Robbins called Mr. Jagger to advise his employment was terminated and, again, no reason or justification was provided.

The fraudulent information stemmed from the Pipeline Accelerator lead generation product at F&S and, more specifically, the "leads" or "contacts" being sold to clients generated by third-parties that was known to be fraudulent or falsified data. Further, even the legitimate leads from third parties had not been directed to the F&S website to agree to the terms and conditions that would be passed on to the client. Mr. Jagger reasonably believed this to be in violation of the General Data Protection Regulations, the Data Protection Law Enforcement Directives of the European Commission and New York privacy laws.

Given the facts and circumstances leading up to the termination of Mr. Jagger's employment, it is clear

F&S Ltr.
June 21, 2022
Page 2 of 2

it was in violation of the Florida Whistle Blower Act for his opposition to the illegal practices taking place with F&S. Given the income Mr. Jaggers generated while working for F&S and the difficulty in securing comparable employment, we anticipate his losses will be significant. While the best we can do at this juncture is to forecast those losses, we reasonably anticipate they will be no less than two years worth of his income. The Florida Whistle Blower Act also allows Mr. Jagger to recover compensatory/emotional distress damages and his attorney's fees and costs. Mr. Jagger has authorized me to extend a one-time offer to resolve this dispute, and not file suit, for $778,000. This offer will expire ten (10) days following your receipt of this letter at which time suit will be filed.

Should acceptable terms not be reached, demand is hereby made for insurance coverage(s) of F&S. Pursuant to Section 627.4137 of the Florida Statutes, please provide, within 30 days, a statement under oath by a corporate officer or claims manager, setting forth the following information with regard to each known policy of insurance, including but not limited to liability, director and officer, excess, umbrella or any other type of liability insurance:

1. The name of the insurer;

2. The name of the insured;

3. The limits of liability coverage;

4. A statement of any policy or coverage defense which said insurer reasonably believes is available to said insured; and

5. A copy of the declaration sheet, including a disclosure of insurance and an entire copy of the policy, including any and all endorsements, attachments and amendments.

It is also specifically requested that you disclose the name and coverage of each known insurer and that you forward this request for information, as required by this section, to all affected insurers.

Lastly, as this may result in litigation F&S is to be placed on a litigation hold and maintain any and all documents, in any form whether paper or electronic, pertaining to Mr. Jagger's employment until either the matter is resolved or the litigation is concluded.

Should you have any questions, please contact my office.

Sincerely,

Arthur Schofield, Esq.
ARTHUR T. SCHOFIELD, P.A.

cc: Robert F. Jaggers III